**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTORY'S DAWN, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CLARENCE ANICHOLAS CLEMONS III *et al.*, <br><br> Defendants. | Civil Action No. 21-9744 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiffs Victory's Dawn, Inc., Gayle Morrison, and William Clemons Jr.'s (collectively, "Plaintiffs") Motion to hold in contempt Defendants Clarence Anicholas Clemons III and Big Man's West LLC ("Defendants"). (ECF No. 27.) Defendants did not oppose Plaintiffs' Motion. Plaintiffs also filed supplemental correspondence in support of their Motion. (ECF Nos. 28, 30, 31.) Having considered Plaintiffs' submissions, the Court decides this matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiffs' Motion.

**I.    BACKGROUND**

A legendary saxophonist with Bruce Springsteen and the E Street Band known famously by his sobriquet "The Big Man," Clarence A. Clemons passed away in 2011. (Compl. ¶¶ 2-3, ECF No. 1.) Clemons's fame and financial success enabled him to set up a trust (the "Trust") to provide for his family, including his four sons. (*Id.* ¶ 11.) The Trust provides that the trustee has sole control

over Clemons's name and likeness until the youngest of Clemons's sons reaches age 25, set to occur in 2023. (*Id.* ¶¶ 12-13.)

Notwithstanding that provision, two of Clemons's older sons, Charles and Nick, began marketing products using Clemons's name and likeness without authorization from the Trust. In 2017, the pair set up a limited liability company called Big Man's West LLC to sell a beer called "Big Man's Brew." (*Id.* ¶¶ 20-21.) Seeking to grow the LLC, Nick agreed to license the name "Big Man's Brew" to a third party. (*Id.* ¶¶ 21-22.) He further sought capital from private equity investors to help fund the beer business. (*Id.* ¶ 44.) Both times Nick represented himself as having control of Clemons's intellectual property rights, even though the Trust had not granted that authorization. (*Id.* ¶¶ 22, 44.) Elsewhere, Charles and Nick have expanded their product line. A December 2020 social media post, for example, advertises "Big Man Blazed Goods" for sale in Asbury Park. (*Id.* ¶ 42.) A January 2021 social media post hawks a virtual concert called the "2021 Big Man's Bash" produced by "Big Man's Management Music & Promotions." (*Id.* ¶ 40.) Still another January 2021 social media post offers cannabis for sale under the "Big Man" name. (*Id.* ¶ 36.)

Eventually the Trust sued Defendants Nick and Big Man's West LLC for violations under the Lanham Act and various unfair competition torts. (*See generally id.*) The Trust also moved for a preliminary injunction to enjoin Defendants from further using Clemons's name and likeness without authorization. (ECF No. 2.) Despite proper service and multiple opportunities to appear, Defendants never answered the Complaint nor appeared for status conferences set by the Court. (*E.g.*, ECF Nos. 7, 10.) As a result, the Court granted the Trust's injunction in a May 24, 2021 Order (the "Order"). (Order, ECF No. 25.) The Order mandated that, among other prohibitions, Defendants stop

> using any reproduction, counterfeit, copy, or colorable imitation of the trademarks BIG MAN'S BREW, BIG MAN'S WEST, BIG

>MAN'S MANAGEMENT MUSIC & PROMOTIONS and BIG MAN'S BLAZED BAKED GOODS or indicia of the name or likeness of the late musician Clarence Anicholas Clemons Jr. to identify any goods or the rendering of any services not authorized by Plaintiffs.

(*Id.* at 2 (defined terms omitted).) As directed by the Order, Plaintiffs served the Order on Defendants via overnight mail on May 28, 2021. (*See* Van Benthysen Decl. ¶ 13, ECF No. 27-3 ("On May 28, 2021, I caused copies of the May 24 Order to be mailed to Clarence Anicholas Clemons III . . . and to . . . [Big Man's West LLC's] registered agent.").)

Defendants have taken no actions to comply with the Order since receiving it. They have not responded to any filing in this action, including this Motion and Plaintiffs' recently filed motion for default judgment. More troublingly, however, Plaintiffs detail Defendants' extensive and ongoing violations of the Order:

- A May 28, 2021 Facebook post by Nick showing "Big Man Blazed Baked Goods" (Pls.' Mot. Ex. 3, ECF No. 27-6);

- A May 31, 2021 Facebook post by Nick advertising "Big Man's Brew" for sale (Pls.' Mot. Ex 4, ECF No. 27-7);

- A June 12, 2021 Facebook post by Nick showing "Big Man Blazed Baked Goods" (Pls.' Mot. Ex. 5, ECF No. 27-8); and

- A June 15, 2021 Facebook flyer posted by Nick showing "Big Man's West," "Big Man's Management," "E Street Brewery," "Big Man Blazed Baked Goods," "Big Man's Bourbon," "Big Man's Media," "Big Man's Apparel West," and "Big Man Fund" (Pls.' Mot. Ex. 6, ECF No. 27-9).

In addition, recent correspondence filed by Plaintiffs shows further examples of non-compliance with the Order:

- July 2021 Facebook posts by Nick showing "Big Man's Management" and "Big Man Blazed Baked Goods" (Pls.' Dec. 2021 Correspondence Ex. 1, ECF No. 31);

- July 2021 Facebook posts by Nick showing "Big Man's Management" and "Big Man's West" (*id.*);

3

- A September 2021 Facebook post by Nick showing "Big Man's Brew" (*id.*);

- A September 2021 Facebook post by Nick showing "Big Man's West" (*id.*);

- October 2021 Facebook posts by Nick showing "Big Man's Brew" (*id.*);

- October 2021 Facebook posts by Nick showing "Big Man's Brew" and "Big Man Blazed Baked Goods" (*id.*); and

- A December 11, 2021 Facebook post by Nick showing "Big Man's West Entertainment" (*id.*).

## II.     LEGAL STANDARD

Courts possess "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citing *United States v. United Mine Workers*, 330 U.S. 258, 330-32 (1947)). Sanctions for civil contempt serve to "compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994). When determining sanctions for civil contempt, a district court may impose a wide range of penalties, including incarceration, fines, or a reimbursement of costs to the complainant. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) ("[D]istrict courts have broad discretion to fashion an appropriate civil contempt remedy."). To prove civil contempt, a movant must demonstrate that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *See Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995)). The movant must establish these elements by clear and convincing evidence. *Id.* at 1321.

### III. DISCUSSION

Plaintiffs argue that Defendants' ongoing violations of the Court's Order warrant holding them in contempt. The Court agrees. The Order was a valid order from this Court that prohibited Defendants from using the name and likeness of Clemons, especially through the use of "Big Man" marks. (Order 2.) Defendants knew about the Order because it was served on them. (Van Benthysen Decl. ¶ 13.) Despite this knowledge, Plaintiffs have identified at least eleven separate incidents of social media postings by Defendants that have plainly violated the Order. (*See* Pls.' Mot. Exs. 3, 4, 5, 6; Pls.' Dec. 2021 Correspondence.) Further, Defendants have not opposed Plaintiffs' Motion—much less responded to any filing in this action. Thus, no dispute exists that Defendants knowingly violated the Court's Order, thereby warranting a contempt finding.

Plaintiffs request two types of contempt penalties, a $500 per diem fine for each day of Defendants' ongoing noncompliance and reasonable attorneys' fees associated with filing the Motion. The Court exercises its discretion to award both penalties. As to the fine, "[i]n civil contempt proceedings, the classic example of a coercive fine is 'a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.'" *Marks & Sokolov, LLC v. Mireskandari*, No. 13-3152, 2015 WL 4557271, at *5 (E.D. Pa. July 29, 2015) (quoting *Bagwell*, 512 U.S. at 829). Given the gravity of the ongoing violations and Defendants' failure to respond in this matter, the Court imposes a prospective $250 per diem fine for each day Defendants continue to violate the Court's Order. *See NLRB v. KRS Contractors LLC*, No. 19-13887, 2021 WL 465301, at *4 (D.N.J. Feb. 9, 2021) (imposing coercive fine where the defendant "failed to appear or contact the [c]ourt," notwithstanding that it had "ample opportunities to appear before the [c]ourt and, alternatively, contact the [c]ourt either through written response or by phone"). Compliance with the Order includes (but is not limited to) removing all social posts that use Clemons's name and likeness, as well as refraining from using Clemons's name and likeness going

5

forward. The Court imposes this fine for up to a 30-day period, ending on the earlier of Defendants' compliance with the Order or 30 days from service of this Memorandum Opinion and accompanying order on Defendants.[1]

As to the attorneys' fees, the Court finds an award of fees appropriate. *See In re Linerboard Antitrust Litig.*, 361 F. App'x 392, 399 (3d Cir. 2010) ("Compensatory sanctions may include the reasonable costs of prosecuting the contempt, including attorneys' fees." (citation omitted)); *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party" (citation omitted)). Significantly, in the contempt context, fee awards must relate to the contemnors' violative conduct and must not exceed the actual damages caused by that conduct. *See Cardionet, LLC v. Mednet Healthcare Techs., Inc.*, 146 F. Supp. 3d 671, 698 (E.D. Pa. 2015) (first quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982); and then quoting *Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*, 110 F. App'x 283, 289 (3d Cir. 2004)). Further, district courts calculate the propriety of fee awards using the lodestar method, which is "the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably expended." *Pennsylvania v. Del. Vall. Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The party seeking fees establishes reasonable fees by submitting evidence supporting the number of hours billed and the hourly rate claimed. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Here, Plaintiffs seek $7,019.40 in fees and costs. Plaintiffs submitted two declarations in support of their fee requests. The first avers that Plaintiffs incurred $591.90 in costs associated

---

[1] Should Defendants continue to violate the Court's Order after this 30-day period, Plaintiffs may move again for contempt via letter motion.

with the Motion and that Brett Van Benthysen spent 11.9 hours working on the Motion at a rate of $475 per hour. (Van Benthysen Decl. ¶¶ 19-20, 22-23, 25, ECF No. 27-3; Pls.' Mot. Ex. 8, Billing Records, ECF No. 27-11.) Mr. Van Benthysen has practiced for more than a decade in commercial litigation in state and federal court. (Van Benthysen Decl. ¶ 17.) The second declaration avers that Robert W. Clarida spent one hour working on the Motion at a rate of $775 per hour. (Clarida Decl. ¶¶ 6-7, ECF No. 27-2; Pls.' Mot. Ex. 8.) Mr. Clarida has 23 years of experience in copyright and trademark litigation. (Clarida Decl. ¶¶ 2-4.) The Court finds that this evidence supports reasonable billing hours and reasonable rates. Neither the hours billed, nor the rates claimed are duplicative or excessive, especially considering Plaintiffs' attorneys' experience in commercial and trademark litigation. (*See* Pls.' Mot. 11-12 (listing cases where similar rates found reasonable); *Wachtel v. Health Net, Inc.*, Nos. 01-4183, 03-1801, 2007 WL 1791553, at *3 (D.N.J. June 19, 2007) (approving hourly billing rates of up to $650 for partner and $425 for associates).) Further, all the fees and costs relate to the Motion. *See Inst. for Motivational Living, Inc.*, 110 F. App'x at 289 (refusing to award fees unrelated to contempt motion). In addition, Defendants have failed to argue that Plaintiffs' fees are unreasonable. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("The district court cannot decrease a fee award based on factors not raised at all by the adverse party.") The Court thus awards Plaintiffs their reasonable fees and costs of $7,019.40.

### IV.    CONCLUSION

The Court grants Plaintiffs' Motion. It issues a coercive fee of $250 per day for up to a 30-day period and awards Plaintiffs $7,019.40 in fees and costs incurred with bringing the Motion. The Court will issue an order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE