**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTORY'S DAWN, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 21-9744 (MAS) (TJB) |
| CLARENCE ANICHOLAS CLEMONS III *et al.*, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

    This matter comes before the Court on two motions from Plaintiffs Victory's Dawn, Inc., Gayle Morrison, and William M. Clemons Jr. (collectively, "Plaintiffs"). The first is a Motion for Default Judgment against Defendants Clarence Anicholas Clemons III ("Nick") and Big Man's West LLC ("BMW," and together with Nick, "Defendants"). (ECF No. 32.) The second is a renewed Motion for Contempt against Defendants. (ECF No. 38.) As is typical for their conduct in this case, Defendants did not respond to either motion. The Court has carefully reviewed Plaintiffs' submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiffs' Motions.

**I.    BACKGROUND**

    The Court discussed the factual background in its February 17, 2022 Memorandum Opinion (the "February 17 Opinion") on Plaintiffs' first motion for contempt and need not rehash it here. *See Victory's Dawn v. Clemons*, No. 21-9744, 2022 WL 494112, at *1-2 (D.N.J. Feb. 17,

2022), ECF No. 34. Since February 17, Defendants have continued to ignore the Court's orders.[1] For example, Defendants continue to infringe on Plaintiffs' intellectual property—refusing to follow the Court's May 24, 2021 injunction (the "May 24 Order") and refusing to pay the $250-a-day fee imposed by the Court's February 17, 2022 order (the "February 17 Order"). No question exists that Defendants are familiar with this lawsuit. In fact, on the day the Court issued its last order, Nick commented to Law360 that "[t]here's no infringement; it's a frivolous lawsuit." (Pls.' Contempt Mot. Ex. 2, ECF No. 38-2.) The next day, Nick commented to *Billboard* that the lawsuit was "frivolous," that he had "totally disregarded it," and that he was "not even considering" complying with the February 17 Order. (Pls.' Contempt Mot. Ex. 1, ECF No. 38-1.)

Defendants' deliberate disregard for this lawsuit mirrors their deliberate disregard for Plaintiffs' intellectual property:

- Sometime after the Court's February 17 Order, Defendants set up a new website that uses the Big Man's West mark and the likeness of Clarence Clemons. (*See* Pls.' Contempt Mot. Ex. 3, ECF No. 38-3.)

- Between February 18 and March 31, 2022, Defendants posted at least 37 messages to several social media sites using the Big Man's West mark or the likeness of Clarence Clemons. (*See* Pls.' Contempt Mot. Ex. 4, ECF No. 38-4.)

- After the Court's February 17 Order, Nick used the Big Man's West mark to attempt to sell shares of "Big Man's Brew" to investors. (*See* Pls.' Contempt Mot. Ex. 5, ECF No. 38-5.)

Considering these ongoing violations, Plaintiffs ask the Court to impose a $500 daily fine, award fees, and grant their motion for default judgment. (Pls.' Contempt Mot. 3, ECF No. 38.)

---

[1] Plaintiffs filed an affidavit of service averring that they served the Court's February 17 Opinion and Order on Defendants on February 21, 2022. (Cert. of Service, ECF No. 36.)

## II.     LEGAL STANDARD

### A.     Motion for Default Judgment

Federal Rule of Civil Procedure 55[2] authorizes the Court to enter default judgment against "a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). That said, because entry of default judgment resolves a plaintiffs' claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *First*, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the Complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *Third*, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (ultimately citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

The Court's inquiry does not end there. "Default does not establish liability for the amount of damages claimed by the plaintiff." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")). Thus, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

**B.      Motion for Contempt**

Courts possess "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted). Sanctions for civil contempt serve to "compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). When determining sanctions for civil contempt, a district court may impose a wide range of penalties, including incarceration, fines, or a reimbursement of costs to the complainant. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) ("[D]istrict courts have broad discretion to fashion an appropriate civil contempt remedy."). To prove civil contempt, a movant must demonstrate that "(1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order." *Harris v. City*

4

*of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995)). The movant must establish these elements by clear and convincing evidence. *Id.* at 1321.

### III.   DISCUSSION

The Court first considers Plaintiffs' Motion for Default Judgment before turning to their renewed Motion for Contempt.[3]

####    A.    The Court Grants Plaintiffs' Motion for Default Judgment as to Liability.

#####        1.    Plaintiffs' Service Was Proper.

The Court first analyzes whether Plaintiffs properly served Defendants. Plaintiffs' service was proper. Rule 4 governs service and provides that an individual may be served by a nonparty "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" and that a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(B), (h)(1)(B). Plaintiffs filed an affidavit of service showing that a process server successfully delivered copies of the summons, complaint, and associated exhibits to James Dietz, a co-occupant of Nick's house in Neptune City on April 29, 2021. (Compl. ¶ 9, ECF No. 1; Aff. of Service, ECF No. 14.) A separate affidavit of service revealed that Dietz also accepted service on behalf of Big Man's West LLC and was "authorized to accept on behalf" of Big Man's West LLC. (Aff. of Service, ECF No. 15.) Nothing in the record suggests that service was improper—

---

[3] The Court has subject matter jurisdiction over Plaintiffs' Lanham Act Claim and request for declaratory relief. *See* 15 U.S.C. § 1121(a); 28 U.S.C. § 2201(a). It exercises supplemental jurisdiction over Plaintiffs' related state-law claims. *See* 28 U.S.C. § 1367.

and indeed Defendants have publicly expressed that they know about this lawsuit. The Court therefore concludes that Plaintiffs properly served Defendants.

### 2. The Court Has Personal Jurisdiction Over Defendants.

Even with proper service, the Court must assure itself that it may exercise jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." (alteration in original) (quoting *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999))). On a motion for default judgment, the Court takes as true all well-pleaded jurisdictional allegations in the Complaint to assess whether Plaintiffs have made a prima facie showing of personal jurisdiction. *See Allaham v. Naddaf*, 635 F. App'x 32, 36-37 (3d Cir. 2015) (citations omitted). Here, the Court has personal jurisdiction over Nick because he is a resident of New Jersey. (Compl. ¶ 9.) It also has personal jurisdiction over BMW because BMW is a New Jersey limited liability company having a principal place of business in New Jersey. (*Id.* ¶ 10.)

### 3. Plaintiffs Have Pled a Legitimate Cause of Action.

Having determined that service was proper, the Court next evaluates "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365. Plaintiffs' Complaint asserts six causes of action: (1) declaratory relief that Plaintiffs own Clarence Clemons's intellectual property, (2) violations under the Lanham Act, (3) common law unfair competition, (4) violations under N.J. Stat. Ann. § 56:4-1 *et seq.*, (5) tortious interference with contract, and (6) common law infringement on right of publicity. (*See generally* Compl.) Plaintiffs do not move for any monetary damages but instead for declaratory relief, an

injunction, and attorneys' fees under the Lanham Act.[4] The Court thus cabins its analysis to the Lanham Act as the analysis for injunctive relief and fees will be the same for all Plaintiffs' causes of action. *See Zurich Am. Ins. Co. of Ill. v. Sunshine Trucking, LLC*, No. 20-4481, 2021 WL 860413, at *2 n.2 (E.D. Pa. Mar. 8, 2021) ("Because these claims rest on the same allegations and request the same relief as the breach of contract claim, 'the Court need not address these additional claims.'" (quoting *Zurich Am. Ins. Co. of Ill. v. Option Staffing Servs., LLC*, No. 17-2562, 2017 WL 6388955, at *2 n.1 (D.N.J. Dec. 13, 2017))).[5]

Plaintiffs allege a legitimate Lanham Act violation. The Complaint asserts two theories: false association and false advertising. To show false association, the Complaint must allege that "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017) (citation omitted). False advertising requires another multi-factor showing:

> (1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or

---

[4] In their August 12, 2022 correspondence, Plaintiffs confirmed that "they are willing to forego a damages award if they have the right to collect their attorneys' fees and be awarded the declaratory and permanent injunctive relief." (Aug. 12, 2022 Ltr., ECF No. 40.)

[5] Plaintiffs' declaratory judgment action simply requests that the Court rule that the trust agreement means what it says. (*Compare* Compl. ¶ 49 ("Plaintiffs seek a declaration that the Plaintiff owns all Clarence's 'name and likeness, or similar intangible rights (hereinafter collectively referred to as Grantor's 'intangible personal property')', pursuant to the Trust, that such rights are descendible under New Jersey law, and that all decisions regarding such rights shall be made in the sole and absolute discretion of Plaintiffs including, without limitation, the decision on whether to exploit or not to exploit the Rights, as set forth in the Trust document."), *with* Compl. Ex. A (Trust Agreement) § 6(c), ECF No. 1-1 ("All decisions regarding the Grantor's intangible personal property shall be made in the sole and absolute discretion of the Trustee including, without limitation the decision on whether to exploit or not to exploit rights to such intangible personal property.").) Although the Court fails to see the precise need for this declaration, it nonetheless grants Plaintiffs' declaratory judgment considering the clear infringement outlined below.

> at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Groupe SEB USA, Inc. v. Euro-Pro Operating*, 774 F.3d 192, 198 (3d Cir. 2014) (citations omitted). Under either theory, the Complaint alleges more than enough. It asserts that the "Big Man" mark is valid and protectable. (Compl. ¶¶ 2-3 (alleging that Clarence Clemons ("Clemons") was "famously identified by the name 'the Big Man'" and that Clemons's Wikipedia page notes that he was "also known as The Big Man"); *see also Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 598 (D.N.J. 2000) ("If the mark has not been federally registered, however, the mark is only valid and legally protectable if the plaintiff shows that the mark is inherently distinctive or has secondary meaning, i.e. there is consumer recognition that the mark identifies the source of the service or product.").) It further asserts that Plaintiffs own the Big Man mark under section 6(c) of the trust agreement, which provides that Clemons's intellectual property belongs to the trust until Clemons's youngest son reaches the age of twenty-five. (*See* Trust Agreement § 6(c).) Finally, the Complaint alleges numerous examples of Defendants' infringement that are likely to cause consumer confusion. (*E.g.*, Compl. ¶¶ 36-44.)

Similarly, the Complaint pleads a legitimate false advertising theory. *See Prime Hookah Inc. v. FCM Online LLC*, No. 21-13915, 2022 WL 1115361, at *3 (D.N.J. Apr. 14, 2022) (granting default judgment on Lanham Act false-advertising claim). Defendants have represented—and continue to represent—that they own Clemons's intellectual property. They continue to use that intellectual property to hawk several consumer products, including beer, cannabis, baked goods, musical promotions, and apparel. (*E.g.*, Compl. ¶¶ 36, 40, 42; *see also, e.g.*, Pls.' Contempt Mot. Ex. 4 (listing examples).) They employ social media to carry out their illicit merchandising empire

and confuse customers about the state of their father's intellectual property. Further, Plaintiffs assert that they have been harmed by Defendants' ongoing misrepresentations about Big Man's Brew—as Plaintiffs (not Defendants) are the licensor of Big Man's Brew. (*See* Morrison Decl. ¶ 25 ("Notwithstanding the clear ownership of the Rights by the Plaintiffs, Defendants have repeatedly exploited the Rights without authorization; have misrepresented to investors, consumers, and other third parties that they own or have authority to exploit the Rights; and have interfered with the efforts of BMB, a legitimate licensee of the Trust, to do so.").) Indeed, none of this should be news to Defendants—in December 2019, through counsel, BMW requested authorization from the trust to use Clemons's intellectual property. (*See* Compl. Ex. C (Dec. 10, 2019 Ltr.) ("We are requested that the Trustees approve the use of Clarence's likeness and image to [Big Man's Brew] so that we can continue to build a legacy brand in his honor and maintain the momentum we have already achieved toward this goal.").) That concession notwithstanding, Defendants persist in their false advertising campaign.

### 4. Entry of Default Judgment Is Appropriate.

Next, the Court considers whether entry of a default judgment is appropriate by weighing "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Local 152 Health & Welfare Fund*, 2018 WL 372167, at *3. The Court finds that all three factors weigh in favor of entering default judgment. *First*, the Court has no litigable defenses to consider because Defendants have failed to appear or respond to the Complaint or any other motion. *See Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[B]ecause [defendant] has not answered or otherwise appeared in this action, the

9

Court was unable to ascertain whether she has any litigable defenses.").[6] *Second*, Plaintiffs will be prejudiced because Defendants have never responded to any filing in this action and because they have "no other means to vindicate [their] claims." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (quoting *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). *Finally*, Defendants' "complete inaction . . . reflects willful conduct." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *DiPiazza*, 2016 WL 7015625, at *5). Indeed, Defendants have repeatedly and willfully ignored the Court's May 24 Order and its February 17 Order. The Court has little trouble concluding that entry of default judgment is appropriate in this case.

### B.     The Court Awards a Limited Injunction and Fees.

Having determined that Defendants are liable under the Lanham Act, the Court now considers the proper remedy. Plaintiffs seek a permanent injunction and fees and do not seek monetary damages. (Pls.' Default J. Br. 12-13.) To qualify for a permanent injunction, Plaintiffs must meet four elements:

> (1) that [they have] suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages," prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction."

*Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Free Speech Coal., Inc. v. Att'y Gen. of the U.S.*, 974 F.3d 408, 430 (3d Cir. 2020) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561

---

[6] Regrettably so, as Defendants apparently feel quite strongly that the Court has this case wrong.

U.S. 139, 165 (2010)). To that end, the Court must be careful not to presume irreparable harm because injunctive relief "may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). In applying that standard, the Court is especially cautious in awarding a permanent injunction in the default judgment context. Without the benefit of any opposition, the Court must ensure itself that Plaintiffs have properly demonstrated the necessity of a permanent injunction. Otherwise, default judgment could serve as an end run around the "high burden placed on the moving party to establish that an injunction is warranted." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).

Carefully analyzing Plaintiffs' requested injunction, the Court concludes that they are entitled to an injunction up through Clemons's youngest son's twenty-fifth birthday. The Court chooses that date because the trust agreement divests Plaintiffs of Clemons's intellectual property when the youngest son turns twenty-five. (Trust Agreement § 6(c).) Plaintiffs otherwise easily qualify for a permanent injunction. They have demonstrated irreparable injury to their intellectual property, which Defendants continue to misappropriate without authorization. (*See* Pls.' Contempt Mot. Ex. 4; *MasonPro, Inc. v. Mason Pro One, LLC*, No. 21-1941, 2022 WL 73493, at *3 (D.N.J. Jan. 7, 2022) ("Infringement based on a likelihood of confusion is tantamount to a finding of irreparable injury." (citation omitted)).) Monetary damages are insufficient because Defendants have been unresponsive in this lawsuit and because loss of goodwill is difficult to quantify. *See Chanel, Inc.*, 133 F. Supp. 3d at 689 ("[A]lthough a remedy at law would provide some degree of monetary relief, it would not adequately compensate Plaintiff for the reputational and goodwill injury associated with the distribution of low-quality counterfeit goods, nor would it necessarily

prevent, or even impede, future trademark infringement." (citation omitted)). The balance of hardships favors Plaintiffs as Defendants' only obligation under an injunction would be to follow the injunction. That Defendants may suffer lost merchandising sales by following the law is of little relevance. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brough the injury upon itself."); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004) ("[W]hen the potential harm to each party is weighed, a party 'can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself.'" (second alteration in original) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990))).[7] Finally, an injunction protects the public by protecting Plaintiffs' mark and preventing consumer confusion. *See Chanel, Inc.*, 133 F. Supp. 3d at 690; *Opticians Ass'n of Am.*, 920 F.2d at 197 ("Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused.").

Turning to fees, Plaintiffs pinpoint that the Court may award fees for willful violations of the Lanham Act. *See* 15 U.S.C. § 1117; *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008). Unquestionably, Defendants have willfully violated the Lanham Act. As stated

---

[7] In Facebook musings, Nick appears to suggest that the success of his businesses is reason alone to evade compliance with this Court's directives. (*See* Pls.' Contempt Mot. Ex. 4, at *10 ("Clarence would have no issue with any of his sons keeping his legacy alive and vibrant and serving his adoring fans and new fans with a quality brew.").) But the Third Circuit has soundly rejected a rule that would allow "'a knowing infringer [that] construct[s] its business around its infringement' to avoid an injunction by claiming it would have a 'devastating effect' on that business." *Kos Pharms., Inc.*, 369 F.3d at 728 (alterations in original) (quoting *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983)) (describing that absurd rule as "a result we cannot condone").

before, in 2019, BMW asked the trust for permission to use Clemons's intellectual property—a recognition that the trust owned the property. Nevertheless, Defendants have repeatedly represented that they are the true heirs of that property. (*See* Pls.' Contempt Mot. Ex. 4, at *10 ("Nick attained the IP and owns it").)[8] In addition, Defendants have willfully violated this Court's orders, noting to various media outlets that this lawsuit is frivolous and that they had no intention of changing course. (*E.g.*, Pls.' Contempt Mot. Exs. 1-2.)

Regarding the reasonableness of the fees, Plaintiffs' counsel seeks $47,303.60 in fees, which discounts the fees the Court already awarded Plaintiffs for the first contempt motion. District courts calculate the propriety of fee awards using the lodestar method, which is the product of the attorney's reasonable hourly billing rate multiplied by the number of hours reasonably expended. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986). The party seeking fees establishes reasonable fees by submitting evidence supporting the number of hours billed and the hourly rate claimed. *Rode v. Dellarciprete*, 892 F. 2d 1177, 1183 (3d Cir. 1990). Here, Plaintiffs seek fees for work performed by three attorneys—Brett van Benthysen, Robert Clarida, and Brian Caplan. For the first two, the Court has already found Mr. van Benthysen's and Mr. Clarida's lodestars reasonable and, after careful review of those attorneys' billing records, finds no reason to depart from that finding. The same is true for Mr. Caplan. Mr. Caplan spent 10.4 hours working on the action at a rate of $600 per hour. (Caplan Decl. ¶¶ 3-4, ECF No. 32-22.) He has further represented clients in litigation in the entertainment industry and in intellectual property matters for over thirty years. (Caplan Decl. ¶ 3.) Neither the hours billed

---

[8] Nick is at least somewhat familiar with the terms of the trust agreement as he explained the agreement in at least one Facebook post. (*See* Pls.' Contempt Mot. Ex. 4, at *10 ("Whatever your real issues are, it appears you are using whatever leverage you may have with the Trust, which as you know will soon mature. Jared turns 25 next year. Shortly after, the Trust will not be a factor.").)

nor the rates claimed are duplicative or excessive, especially considering Plaintiffs' attorneys' experience in commercial and trademark litigation. (*See* Pls.' Default J. Mot. Br. 16-17 (listing cases where similar rates were found reasonable); *Wachtel v. Health Net, Inc.*, Nos. 01-4183, 03-1801, 2007 WL 1791553, at *3 (D.N.J. June 19, 2007) (approving hourly billing rates of up to $650 for partners and $425 for associates).) In addition, Defendants have failed to argue that Plaintiffs' fees are unreasonable. *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("[T]he district court cannot decrease a fee award based on factors not raised at all by the adverse party." (citation and internal quotation marks omitted).) The Court awards Plaintiffs their reasonable fees and costs of $47,303.60.

    **C.**    **The Court Imposes a Further $500 Daily Fine and Awards Plaintiffs Fees for Their Second Contempt Motion.**

Turning finally to Plaintiffs' second contempt motion, for the same reasons the Court stated in its February 17 Opinion, the Court again holds Defendants in contempt. Given the gravity of the ongoing violations and Defendants' failure to respond in this matter, the Court imposes a prospective $500 daily fine for each day Defendants continue to violate the Court's orders. *See Bonomo v. Citra Cap. Mgmt., LLC*, No. 11-4409, 2016 WL 7428794, at *3 (D.N.J. May 17, 2016) (imposing a $500 fine on Defendants in order "to coerce him into making a different choice"); *NLRB v. KRS Contractors LLC*, No. 19-13887, 2021 WL 465301, at *4 (D.N.J. Feb. 9, 2021). Compliance with the order includes (but is not limited to) removing all social media posts that use Clarence Clemons's name and likeness, as well as refraining from using Clarence Clemons's name and likeness going forward. The Court imposes this fine for up to a 30-day period, ending on the earlier of Defendants' compliance with this order or 30 days from service of this Memorandum

Opinion and accompanying order on Defendants.[9] In addition, for the reasons stated in its February 17 Opinion, the Court, the Court awards $1,500 in fees and costs.

## IV. CONCLUSION

The Court grants Plaintiffs' Motions for Default Judgment and for Contempt. An order consistent with this Memorandum Opinion will follow.

/s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

---

[9] Further, the Court cautions Defendants that if coercive fines and costs prove ineffective in compelling their compliance with the Court's orders, the Court may impose incarceration to compel Defendants' compliance. *Tracfone Wireless, Inc. v. LaMarsh*, 307 F.R.D. 173, 176 (W.D. Pa. 2015). Indeed, imprisonment "for a fixed term, provided that the contemnor has the option of earlier release if he complies," may be imposed as a sanction "if the contemnor fails after a designated period of time to comply with a court's order." *Id.* (citing *Shillitani v. United States*, 384 U.S. 364, 370 n.6 (1966)).